Antonia Vincenza Pulis Turner sought the custody of Jimmy Antonia Turner, her daughter, by a habeas corpus proceeding before the Chancellor of Calhoun County. She alleged that her daughter's custody was wrongfully withheld by Mr. and Mrs. Jimmy Ray Turner, the child's grandparents. The trial judge awarded the custody of the child to the grandparents. Aggrieved, the mother appeals.
Antonia Vincenza Pulis Turner, hereinafter mother, was formerly married to Jimmy Ray Turner, Jr., the son of the appellees, who is employed by an overseas oil company. Jimmy Antonia Turner, the daughter of the appellant and Jimmy Ray Turner, Jr., was born in Oxford, Mississippi, on September 29, 1966. Upon leaving the hospital the mother and child resided with the paternal grandparents in Calhoun County, Mississippi until July 1967 when *Page 904 
they departed to join the child's father in London, England.
The mother testified that when they arrived in London, the father was found to be living with another woman and that she returned to this country in August 1967 after being threatened by her husband. She and the child resided in New York City until June 1968. While in New York and without financial assistance from the child's father, the mother became ill and requested Mrs. Garnie Mae Turner, the paternal grandmother, to assist her with the child. In response, Mrs. Turner traveled to New York and returned with the child to Bruce, Mississippi, her residence in Calhoun County. The child remained with the grandparents in Bruce until November 1968 when she was returned to her mother in New York City. In June 1969 the child again resided with the grandparents in Bruce and remained until October when she was returned to her mother. She remained in New York with her mother from October 1969 until June 1970. At this time the mother again requested the grandmother for assistance with the child and she was returned to the grandparents' residence in Mississippi where she has remained until the present.
The evidence reveals the following salient facts. The mother is a citizen of the Isle of Malta and resides in a high-rise apartment in the city of New York. She is divorced from the child's father who has never contributed toward the child's support. The mother is without relatives in this country and depends upon her earnings as a waitress for her livelihood. The evidence abundantly establishes that the mother loves her child and sincerely believes that she is capable of supporting the child through her earnings. She testified that the child would be placed in a neighborhood Catholic day school during her periods of employment.
The appellees are unquestionably good citizens of this state who have unselfishly contributed to the well-being of Jimmy Antonia Turner, their granddaughter. They possess great love for their granddaughter and desire her custody. They have a nice home and the financial ability to provide for the child's maintenance. Their residence is in close proximity to schools and churches in Bruce, Mississippi, which the child has regularly attended. Indeed, the compassion and generosity of the grandparents makes the case more difficult.
There is conflicting evidence relating to the contact of the mother with her child from June 1970 until June 1974. Overall, the evidence is insufficient for a finding that the mother had abandoned her child or was otherwise unfit for her custody and the chancellor did not so find. To the contrary, the evidence establishes that the relationship between the child, the mother and the grandparents was one of affection. The mother visited the child, called frequently and sent gifts on appropriate occasions. At one time she came to visit and accompanied the appellees with the child to Disney World in Florida on her vacation. The grandparents assumed financial responsibility for the child's support. The mother did not contribute financially nor did the appellees request her to do so.
The circumstances which initiated this habeas corpus proceeding arose when the mother expressed a desire to take her child to the Isle of Malta to visit her parents. In January 1974 the mother informed the appellees that she intended to visit her mother and father in Malta and that she desired her daughter to accompany her on this trip so that they might become acquainted with each other. The mother apparently thought the appellees had agreed to the trip and purchased air passage to Malta and return for herself and daughter. Upon arriving in Mississippi shortly before her scheduled departure the appellees refused permission for the child to be removed from their home. Tempers flared, there were verbal recriminations, threats were exchanged, the child became upset and the sheriff was called. The mother was arrested, placed in jail and charged *Page 905 
with assault and battery with intent to murder although there is no evidence to indicate that blows were exchanged. Thereafter the mother was released, obtained an attorney and this habeas corpus proceeding was filed seeking the child's custody.
The chancellor found the best interest of the child would be served by granting her custody to the grandparents. At that time the grandmother was 55 years old and the grandfather, whose exact age was not shown, was drawing social security benefits. The chancellor transformed the habeas corpus proceedings into those of chancery under the provisions of Mississippi Code Annotated section 93-11-65 (1972) for the purpose, probably, of granting the mother visitation rights with her child. The chancellor's finding is best stated in his concluding remarks:
 Mississippi is strong on the proposition that parents are entitled to the custody of a child above anybody else. Yet that presumes the person who has the custody of the child that was given by somebody else, has a wholesome and suitable place to keep them.
 Now, I don't like the idea of letting one go off . . . way off in another state out of my jurisdiction, and I have never been confronted with this matter of one going overseas. But regardless of the bond and regardless of promises this court would be helpless if this child was carried to the Island of Malta and its mother refused to bring it back. I don't think her present intention is that she would refuse to, but . . . I think, honestly believe if these folks had let her gone on as they had previously agreed to, as she said, carried the child over there and returned it, that it would have all been well and good, but since they refused to let her do it, or to consent to it, and since this situation arose out there at the home, I am afraid to take a chance on it. And in the final analysis it is my responsibility, and I know that the child will be well cared for under the present situation. The mother admits she is being properly taken care of.
 So the door will not be closed in the future. They will be entitled to the care, custody and control of the child until further order of the court. Of course, no further order to be entered without a further hearing. She will be entitled to the right of reasonable visitation, which I believe can be worked out between the lawyers in this case, and these folks.
 I want to say this, aside from my opinion, that I hope Mr. and Mrs. Turner will welcome her to come back and see the child, and that she will be willing when she can to go and see it, if they can't agree about that, then, of course, we will have to work out some other plan of visitation.
 * * * *
 Another thing that weighed heavily upon the mind of the court in making this decision was the situation with reference to the nervous condition of the child, and the fear that such a radical change, particularly since there has been a difficulty about it, might have a traumatic and harmful effect upon the welfare of the child, and that had a great deal to do with the court's decision, and I wanted that in the record.
 She will have a right at any time when she wants to, when it won't interfere with the child's school work, to come and take it anywhere in this area that she wants to, and stay as much as five or six days.
The effect of this finding was to deprive the mother of her child even though there is no evidence, much less clear and convincing evidence, that she is either morally unfit or has abandoned her child. Merged with the issue of the legal right of the mother to her daughter is inevitably the minor's best interest, and more directly, the issue of removing the child from a favorable environment created by the grandparents in response to the mother's natural *Page 906 
and legal right to her offspring, but who probably has a less favorable environment. The issue presented much difficulty to the chancellor as he noted, and we add that it is not less difficult for us even though we think the law is well settled on the issue.
In Pace v. Barrett, 205 So.2d 647 (Miss. 1968), we held:
 The paternal grandparents have no right to the custody of their grandson, as against the mother, until they have charged and proved that she has forfeited her natural right to the custody of her minor son by abandonment or by immoral conduct, or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another. Bunkley Morse, Amis on Divorce and Separation in Mississippi, Section 8.01 (1957). The burden of proof is squarely on their shoulders . . . . (205 So.2d at 649)
In Rodgers v. Rodgers, 274 So.2d 671 (Miss. 1973), we held in a contest between the natural mother of the child and third parties, the paternal grandparents:
 [I]t is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child. . . . (274 So.2d at 673).
We repeat, there was no finding that the mother had abandoned this child or that she is unfit for her custody. Other citations to the same effect are unnecessary due to their great number. We therefore must conclude that the mother is entitled to her child and that the trial judge erred in not so finding. This conclusion will unfortunately bring heartbreak to the grandparents and, undoubtedly, upset the child, which we regret, but we hope that time will bring understanding.
This case was considered by a conference of the justices en banc.
REVERSED AND JUDGMENT HERE FOR THE APPELLANT.
GILLESPIE, C.J., INZER, P.J., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
SMITH, J., dissents.