381 So.2d 147 (1980)
Dianna Angelic NAVEDA, by Next Friend, Annie Mae Lane et al.
v.
Barbara Jean Naveda AHUMADA.
No. 51642.
Supreme Court of Mississippi.
February 20, 1980.
As Corrected On Denial of Rehearing April 2, 1980.
Laurel G. Weir, Terry L. Jordan, Philadelphia, for appellants.
Robert L. McHaney, Jr., Starkville, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
LEE, Justice, for the Court:
Petition for adoption was filed in the Chancery Court of Neshoba County by Annie Mae Lane, Next Friend of Dianna Angelic Naveda, Annie Mae Lane, Individually, and John Bryant Lane, Jr., seeking to adopt Dianna Angelic Naveda, eight-year-old child, to Annie Mae Lane and John Lane, Jr., maternal grandparents of said child. Decree was entered ordering the adoption on December 19, 1975. Barbara Jane Naveda Ahumada, mother of the child, subsequently filed a petition to set aside the adoption decree and, after a full hearing, the chancellor granted the prayer of said petition and vacated the decree. Thereafter, a hearing was held in the cause to determine custody of the child and same was granted to the mother with visitation rights to the Lanes. They appealed the *148 order setting aside the adoption decree and Mrs. Ahumada cross-appeals from that part of the decree granting the Lanes two (2) months visitation rights (custody) in the summer time. Appellee has filed a motion to dismiss the direct appeal for the reason that Mrs. Lane spirited away the child and concealed her since rendition of the decree in the lower court. We overrule that motion since the interest and welfare of the minor child, who is a party to this proceeding, is involved.
The sole question on direct appeal is whether or not the lower court erred in setting aside the adoption decree and in granting custody of the child to her mother.
In order to resolve the question presented, it is necessary for this Court to determine whether or not the Chancery Court of Neshoba County acquired jurisdiction of the person of appellee in the adoption proceeding. The sworn petition for adoption averred that
"Petitioner, DIANNA ANGELIC NAVEDA, is a minor without legal guardian, who files this Petition by her adult grandmother and next friend, ANNIE MAE LANE, and is joined in said Petition by ANNIE MAE LANE, individually, and by her adult grandfather, JOHN BRYANT LANE, JR. individually, and shows the Court that the adult Defendants are BARBARA JEAN NAVEDA and LUIS MIGUEL NAVEDA, the adult mother and father of said minor, and shows the Court that Petitioners are all resident citizens of Neshoba County, Mississippi, and have made diligent search and inquiry for the place of residence, post office address, and street address of said Defendants, and after having made said diligent search and inquiry aforesaid, that they do not know and cannot ascertain the place of residence, post office address and street address of said Defendants, and they so abscond and conceal themselves that they cannot be served with legal process in the State of Mississippi."
Upon the foregoing averment that the petitioners did not know the place of residence, post office address and street address of appellee and the father of the child, publication was made for them. (Appellee and Luis Naveda were divorced and appellee was granted custody of the child).
The petition for adoption was filed November 24, 1975. On, and prior to, that date, appellee had been, and was, a student at the University of Southern Mississippi. For some period of time, Dianna lived there with her mother and, during other times, when she was residing with her grandparents (appellants), appellee visited her and communicated with her. Appellee testified that, while a student at the University of Southern Mississippi, she left Hattiesburg on the 14th of November, 1975, for the purpose of going to Mexico to act as godmother to a friend's child. She returned to Hattiesburg on November 29, 1975 and immediately communicated with the Lanes, inquiring as to the welfare of the child. She also testified that while in Mexico, she telephoned the Lanes to inform them that she had arrived there safely, but the Lanes declined to talk with her. She stated that she wanted to see the child, that Mrs. Lane told her not to come to Neshoba County, since the Lanes were leaving town, and Mrs. Lane suggested that they and Dianna meet her in Jackson at another daughter's home on December 6, 1975. That meeting occurred, appellee spent the day with the child, and Mrs. Lane never told her that an adoption petition had been filed by them, that publication had been made in the paper for her to answer the petition, and that the trial date on the petition had been set for December 19, 1975. Appellee did not learn of the adoption until some time after December 19, 1975, and she began taking steps to obtain legal representation for the purpose of setting aside the adoption decree and to obtain custody of Dianna.
Appellants argue that the lower court erred in setting aside the adoption decree in that Mississippi Code Annotated Section 93-17-15 (1972) bars the action after the elapse of a six-month period. The section states:

*149 "No action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six (6) months of the entry thereof."
Mississippi Code Annotated Section 93-17-17 (1972) provides:
"For all purposes of this chapter, the chancery court shall be a court of general jurisdiction and it is declared to be the public policy of the state that no adoption proceedings shall be permitted to be set aside except for jurisdictional defects and for failure to file and prosecute the same under the provisions of this chapter."
Appellants cite Walter v. August, 186 Cal. App.2d 395, 8 Cal. Rptr. 778, 83 A.L.R.2d 941 (1960), which was decided on a five-year statute of limitations under California law. That case is not authority here, particularly since there is no provision in the California statutes that an adoption may be set aside because of jurisdictional defects.
The opinion of the lower court in the present case stated:
"I think you can look at this case in either of two aspects: Whether or not this jurisdiction was obtained fraudulently or whether the jurisdiction was obtained without proper understanding of what is required. In either event, this Court is of the opinion that the Court did not have jurisdiction of this party to begin with. There is much testimony, much documentary evidence, that the mother of this child was temporarily out of this country for a week or two, that the Petitioners could have determined a post office and street address very easily out of the country or could have located her. There is just too much communication back and forth between these parties immediately before the defendant left the country and after she came back to support any sort of non-resident publication; therefore, it is the opinion of the Court that this Court did not have jurisdiction of the defendants; and, therefore, the prior decree is void... ."
We hold that the chancellor must be affirmed on the issue of whether or not the Lanes knew the whereabouts, place of residence, post office and street addresses of appellee, which goes directly to the jurisdiction of the lower court, since he was not manifestly wrong in his finding of fact. Further, the lower court was eminently correct in exercising its power to set aside the adoption decree. Krohn v. Migues, 274 So.2d 654 (Miss. 1973); City of Starkville v. Thompson, 260 So.2d 191 (Miss. 1972); Whiteway Finance Co. v. Parker, 226 So.2d 903 (Miss. 1969); Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 12.20, at 256 (1957).
The next question presented is whether or not the chancellor erred in granting custody of the child to appellee and, on cross-appeal, whether or not the court erred in granting visitation rights to the Lanes.
Again, the first part of the question is controlled by the chancellor's finding on conflicting evidence. We cannot say he was manifestly wrong in granting custody to the mother, who, unless unfit to have custody of the child, was entitled thereto. The second part of the question as to whether or not the chancellor erred in granting visitation rights to the Lanes of two (2) months during the summer vacation is controlled by applicable law. In 67A C.J.S. Parent and Child § 41(c), at 296 (1978), the general law is stated as follows:
"Generally, where custody of a child has been awarded to a fit parent, grandparents and third persons are not entitled to visitation privileges. Grandparents have no common-law right to visitation; their rights are derivative through the natural parent, and any obligation of a custodial parent to permit visitation of a grandchild by the grandparent is a moral obligation and not a legal right."
In 59 Am.Jur.2d Parent and Child § 45, at 130 (1971), it is stated:
"The right of visitation derives from the right of custody and is controlled by the same legal principles. Thus, as in custody cases, the best interest and welfare of the child is the controlling consideration... . But where an award *150 of custody to a nonresident or a person about to leave the jurisdiction has been determined upon, this conclusion has not been affected by the fact that the visitorial rights of the other parent would thereby be impaired or destroyed, since visitorial rights must give way when in conflict with the child's welfare.
Parents who have custody have the right to determine with whom the child will associate. Accordingly, where a parent or parents have custody, the courts will not undertake to give visitation rights to a nonparent  a grandparent, for example  over the parents' objection."
This Court set forth the rule in Mississippi in Gray v. Gray, 121 Miss. 541, 83 So. 726 (1920) as follows:
"After awarding the custody of a child to the party entitled thereto, the judge in a habeas corpus trial is without power to direct the manner in which such party shall exercise his lawful authority over such child, or to direct that he shall thereafter surrender, though temporarily, the custody thereof to another person. The judge does not merely, because he presided in a habeas corpus trial in which the right to the custody of a person was determined, thereby acquire perpetual jurisdiction over the custody and welfare of such person." 121 Miss. at 545, 83 So. at 726-727.
Most cases involving custody between parents and grandparents arise through habeas corpus proceedings, which deal solely with right of custody as stated above. We recognize that the chancery court has the authority and duty to grant children's custody to those individuals, where the best interest of the child requires, but always preferring parents, if possible.
Without question, the Lanes were concerned with the welfare of their grandchild, loved her very much and desired to care for, support and look after her. However, in Turner v. Turner, 331 So.2d 903 (Miss. 1976), quoting from Pace v. Barrett, 205 So.2d 647 (Miss. 1968), this Court said:
"`The paternal grandparents have no right to the custody of their grandson, as against the mother, until they have charged and proved that she has forfeited her natural right to the custody of her minor son by abandonment or by immoral conduct, or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another. Bunkley & Morse, Amis on Divorce and Separation in Mississippi, Section 8.01 (1957). The burden of proof is squarely on their shoulders. .. .' (205 So.2d at 649)." 331 So.2d at 906.
And, further, quoting from Rodgers v. Rodgers, 274 So.2d 671 (Miss. 1973):
"`[I]t is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child. .. .' (274 So.2d at 673)." 331 So.2d at 906.
We conclude that the chancellor erred in granting visitation rights, or part-time custody, of Dianna Naveda to the Lanes, and that the judgment of the lower court in that respect should be reversed and judgment rendered here in favor of appellee/cross-appellant.
AFFIRMED ON DIRECT APPEAL, REVERSED ON CROSS-APPEAL AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING, and COFER, JJ., concur.