471 So.2d 1228 (1985)
Thomas STOKER
v.
Allie Sue Stoker HUGGINS.
No. 54817.
Supreme Court of Mississippi.
June 5, 1985.
Donald W. Bond, Winona, for appellant.
Hugh L. Bailey, Sr., Hugh L. Bailey, Jr., Bailey & Bailey, Winona, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and ANDERSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Allie Sue Stoker Huggins filed a petition in the Chancery Court of Montgomery County to modify a divorce decree entered on November 17, 1980, which granted Thomas Stoker a divorce from Allie Sue Stoker, found her unfit to have custody of the parties' two children, and awarded their custody to Stoker, who was adjudged a fit parent. The chancellor modified the November 17, 1980, decree and granted custody to the maternal grandparents of the children, the R.L. Herrings.
Stoker has appealed to this Court and assigns three (3) errors in the trial below. We principally address the first assignment of error, viz, the chancellor was manifestly wrong in removing custody of the children from appellant and granting custody to the Herrings.
The children are Wendy Stoker, born November 22, 1967, and Sherri Renee Stoker, born June 21, 1969. After the divorce, appellant invited the Herrings to move into his home and live with him and the girls. Mrs. Herring spent a great deal of time in caring for the children and this arrangement was entirely satisfactory until June of 1981. At that time, Mrs. Patsy Hill moved in the Stoker home and brought with her a 15-year-old son by a former marriage. Appellant and Mrs. Hill subsequently married on August 29, 1981.
It is admitted that Mrs. Hill spent several nights in his home, but denied that she moved in before they were married. At *1229 any rate, the Herrings left appellant's home when that situation developed.
The case stated most strongly against appellant listed the following facts:
(1) Mr. Stoker and Mrs. Hill began living together prior to their marriage.
(2) The children did not attend church as regularly as before Mrs. Hill moved in.
(3) Mrs. Hill had a 15-year-old son.
(4) He was left in the home alone with these children at times.
(5) The girls had to do a great deal of the cooking and cleaning up in the house.
(6) The girls' maternal grandparents and their great aunt had spent time taking care of them.
In Rodgers v. Rodgers, 274 So.2d 671, 673 (Miss. 1973), the Court said:
[I]t is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child. [Citations omitted].
See also Thomas v. Purvis, 384 So.2d 610, 612 (Miss. 1980); and Naveda v. Ahumada, 381 So.2d 147, 150 (Miss. 1980).
Before rendering his final decision, the chancellor ordered a report to be submitted by the Welfare Department to him. Although the appellant assigns as error the report received by the chancellor, it is highly complimentary of, and beneficial to, the appellant. For that reason, we do not consider the assignment of error.
The chancellor's opinion indicates that in making his decision, he relied (1) upon the evidence presented at trial, (2) the welfare reports, and (3) an independent investigation which he made to reach his decision. Facts from his investigation do not appear in the record.[1] It is fairly obvious that the chancellor was persuaded in his decision by the fact that the 15-year-old son of Mrs. Hill (Stoker) lived in the home, although there was no indication of any impropriety between him and the Stoker girls, and the fact that Mrs. Hill was in the Stoker home before her marriage to appellant. In Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983), Ricker was granted a divorce and custody of a child. There was evidence that she had slept with several men while the child's custody was held by her. In discussing the issue, the Court said:
Whether Pamela developed a romantic relationship with another man after the divorce is relevant to the extent  and only to the extent  that such a relationship can be shown to have had a definite adverse effect on the child.
431 So.2d at 1144.
The hearing in this cause, on modification of the decree granting custody of the children to appellant, was held September 4, 1981. The parties rested and the case was continued until October 2, 1981, in order for the chancellor to obtain reports from the Montgomery County Welfare Department. The hearing was not held October 2, 1981, yet a final judgment was entered on June 18, 1982. The chancellor granted supersedeas on appellant's appeal, and a period of almost two years has elapsed since the decision. Appellant has had custody of the children by reason of the supersedeas since that date. Wendy is now 17 1/2 years old and Sherri Renee is 16 years of age.
In Naveda v. Ahumada, 381 So.2d 147 (Miss. 1980), the chancellor granted custody of a minor child to her mother but permitted visitation rights to the maternal grandparents for two months during the summertime. That question of the Lanes' visitation rights was presented to this Court on appeal. We said:
Again, the first part of the question is controlled by the chancellor's finding on conflicting evidence. We cannot say he was manifestly wrong in granting custody to the mother, who, unless unfit to *1230 have custody of the child, was entitled thereto. The second part of the question as to whether or not the chancellor erred in granting visitation rights to the Lanes of two (2) months during the summer vacation is controlled by applicable law. In 67A C.J.S. Parent and Child § 41(c), at 296 (1978), the general law is stated as follows:
"Generally, where custody of a child has been awarded to a fit parent, grandparents and third persons are not entitled to visitation privileges. Grandparents have no common-law right to visitation; their rights are derivative through the natural parent, and any obligation of a custodial parent to permit visitation of a grandchild by the grandparent is a moral obligation and not a legal right."
In 59 Am.Jur.2d Parent and Child § 45, at 130 (1971), it is stated:
"The right of visitation derives from the right of custody and is controlled by the same legal principles. Thus, as in custody cases, the best interest and welfare of the child is the controlling consideration... . But where an award of custody to a nonresident or a person about to leave the jurisdiction has been determined upon, this conclusion has not been affected by the fact that the visitorial rights of the other parent would thereby be impaired or destroyed, since visitorial rights must give way when in conflict with the child's welfare.
Parents who have custody have the right to determine with whom the child will associate. Accordingly, where a parent or parents have custody, the courts will not undertake to give visitation rights to a nonparent  a grandparent, for example  over the parents' objection.
381 So.2d at 149-50.
The judgment of the lower court is reversed and rendered.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Cases cannot be decided on the personal investigation of a chancellor.