493 So.2d 952 (1986)
Al Bryan RUTLAND
v.
Lucy Faye PRIDGEN.
No. 55801.
Supreme Court of Mississippi.
August 27, 1986.
Robert Glen Waddle, Jackson, for appellant.
Lee B. Agnew, Jr., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Two issues are raised by this appeal:
I. Should the chancellor have disqualified himself? and
II. Were the chancellor's findings manifestly wrong when he awarded the permanent care, custody and control of two minor children to their maternal grandmother instead of to their natural father?
Rutland is the father of Bryan Keith Rutland and Kimberly Lee Rutland. Pridgen is their maternal grandmother.
Rutland was divorced from the mother of these children on July 9, 1981. There was a child support and property settlement agreement which gave the mother the custody and control of the children with liberal visitation in Rutland. Rutland paid $220.00 per month for support of the two children.
The mother of the children took her own life on March 16, 1984, and ten days later *953 Rutland filed a motion to modify the divorce decree and a writ of habeas corpus. His object was to obtain the custody of his children.
Issue was joined by Pridgen who also sought the permanent care, custody and control of the minor children. The chancery court granted temporary custody of the children to Pridgen.
Prior to the hearing on the merits Rutland filed a motion seeking to have Chancellor Paul Alexander disqualify himself on the grounds that in 1970 and 1971 in his official capacity as county attorney Chancellor Alexander had represented Pridgen in two separate uniform reciprocal enforcement support act complaints.
The chancellor declined to disqualify himself and after a hearing on April 10, 1984, found that it would be in the best interest of the children to leave their primary care, custody and control with their maternal grandmother Pridgen, subject to the rights of visitation to be vested in their natural father Rutland. Rutland was ordered to continue to pay child support in the amount of $220.00 per month.

I.

DID THE CHANCELLOR ERR IN NOT DISQUALIFYING HIMSELF?
Mississippi Code Annotated, § 9-1-11 (1972), provides as follows:
§ 9-1-11. Judge not to sit when interested or related.
The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties. (Emphasis added).
Section 165 of the Mississippi Constitution of 1890 has essentially the same provision as above with the exception of the underlined clause concerning previous counsel.
The issue is not that the judge was related to the parties nor is it that he had a pecuniary or property interest in the litigation or one affecting his individual rights which would require disqualification. The sole issue is whether the chancellor should have disqualified himself because of the prior representation pursuant to the emphasized clause above in Section 9-1-11, or pursuant to Canon 3 C. of the Code of Judicial Conduct. The closest Mississippi case on this point is a criminal case, Smith v. State, 212 Miss. 497, 54 So.2d 739 (1951), in which we said the following, "One who has been actively engaged in any way in the prosecution and conviction of one accused of crime is disqualified under [the statute] from sitting as judge in a matter involving that conviction." 212 Miss. at 503, 54 So.2d at 741.
In our opinion the facts of this case distinguish it from the facts in Smith and do not require that the chancellor recuse himself under the auspices of Section 9-1-11 or Section 165 of the Mississippi Constitution of 1890.
We now address Canon 3 C. of the Code of Judicial Conduct. Canon 3 C.(1)(a) and (b) of the Code of Judicial Conduct provides:
C. Disqualification.
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) he served as lawyer in the matter in controversy or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it; (Emphasis added).
(1)(b) disqualifies the judge only if he was a lawyer in the matter in controversy and as that was not the case here, clearly the *954 chancellor was not required to disqualify himself under C.(1)(b).
However, C. also provides that a judge should disqualify himself when his impartiality might reasonably be questioned. Rutland cites Hall v. Small Business Administration, 695 F.2d 175 (5th Cir.1983); and Lime Co. v. Division of Lime, et al, 571 F. Supp. 710 (N.D.Miss. 1983). The United States Code provides a provision similar to Canon 3. 28 U.S.C.A. § 455 (1977).
The facts of the two federal cases cited are clearly distinguishable from this case and do not control it. However, Hall does give a workable test to determine when a judge should disqualify himself under this provision: A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality. We adopt this objective test.
In Haralson v. Haralson, 483 So.2d 378 (Miss. 1986), though not citing the Code of Judicial Conduct, we held that the chancellor should recuse himself upon remand because of allegations that the appellee consulted him in her choice of attorneys in that case. Recusal was necessary so that the appearance of impropriety could be avoided. Id. at 380.
In Rufin v. State, 481 So.2d 312 (Miss. 1984), we said, "When a judge is not disqualified under § 165 of the Mississippi Constitution, or § 9-1-11, the propriety of his or her sitting is a question to review only in case of manifest abuse of discretion." Id. at 317. See also Coleman v. State, 378 So.2d 640 (Miss. 1979).
Chancellor Alexander's representation of Pridgen in 1970 and 1971 in cases other than the controversy presently before him in this cause was done under the auspices of Mississippi Code Annotated, § 93-11-23 (1972), which at that time mandated that the district attorney or the county attorney, upon request of the chancery court, represent the complainant in any U.R.E.S.A. proceedings. Rutland concedes that the filing of the U.R.E.S.A. action by the county attorney was largely an administrative task. Nothing in this record suggests that these two actions filed by Chancellor Alexander were anything other than routine. The two actions filed more than ten years ago do not create any reasonable doubt about the impartiality of the chancellor in this cause and it was not an abuse of his discretion to deny the motion to disqualify.

II.

DID THE CHANCELLOR ERR IN AWARDING CUSTODY TO THE MATERNAL GRANDMOTHER INSTEAD OF THE NATURAL FATHER?
The general rule is: It is presumed that the best interest of a child will be preserved by his or her remaining with the surviving parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have custody. Stoker v. Huggins, 471 So.2d 1228 (Miss. 1985); Naveda v. Ahumada, 381 So.2d 147 (Miss. 1980); Milam v. Milam, 376 So.2d 1336 (Miss. 1979); Turner v. Turner, 331 So.2d 903 (Miss. 1976).
Simply stated, the natural parent is entitled to custody, as against a third party, unless one of the above conditions is clearly proved.
In this case the chancellor based his decision on the fact that Rutland had not fully exercised the visitation rights granted him in the divorce decree. Testimony on this record supported that finding. However, Rutland did exercise his visitation rights. There is no finding that Rutland had abandoned the children or that he was immoral or unfit. There is no evidence in the record to support any such findings. In fact Pridgen herself testified that Rutland had not abandoned the children nor was he immoral or unfit.
Pridgen relies upon Mississippi Code Annotated, § 93-11-65 (Supp. 1985), as the authority *955 for granting her custody, while Rutland relies upon Mississippi Code Annotated, § 93-13-1 (1972). There is no doubt that the chancellor may grant custody to a grandmother pursuant to § 93-11-65, but he may do so only if one of the above is proved about the parent or parents. See e.g., Boone v. Downey, 259 So.2d 710 (Miss. 1972). This conclusion is supported by § 93-13-1. See Mahaffey v. Mahaffey, 176 Miss. 733, 170 So. 289 (1936).
We therefore conclude that the chancellor was in error in awarding custody to the grandmother without making the requisite findings. We therefore reverse and render judgment here granting custody to Rutland, the natural father of the children. Under the narrow facts of this case we grant Pridgen 120 days from the date of the mandate of this Court to petition the chancery court for visitation rights consistent with Mississippi Code Annotated, § 93-16-1 to § 93-16-7 (Supp. 1985).
REVERSED AND RENDERED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.