# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00349-SCT

*WILMA WALKER*

*v.*

*HARRY SARTIN*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/95 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PAUL A. KOERBER |
| ATTORNEY FOR APPELLEE: | GARLAND D. UPTON |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 09/04/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/25/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Harry Sartin and Cynthia Holloway lived together in Jefferson Davis County with their child Donovan, and Jasmine and Miesha Holloway, Cynthia's children by a prior marriage.

While he lived with them Sartin supported the family, but when problems arose Sartin left the home. He ultimately lost his job some three years ago due to cocaine abuse.

When Cynthia was killed in an accident, on September 11, 1995, her mother, Wilma Walker, moved into Cynthia's home to care for the children. Ultimately, Wilma sold her house so that the children could live in the home in which they had been reared. Wilma Walker's mother lives directly across the street from that home. The home next door is her brother. Also, her younger daughter Angela and Angela's baby, Cara, live in the house with Cynthia's children. On September 12, 1995, the Department of Human Services notified Sartin of Cynthia's death.

Meanwhile, Chancellor Larry Buffington of the Thirteenth Chancery Court District had been sent out

of state for a judicial conference. In his absence Chief Justice Armis E. Hawkins had appointed the three chancellors of the Tenth Chancery Court District to sit as special judges during Buffington's absence. Chancellor Sebe Dale, Jr., one of the special judges, heard this case.

Sartin filed a writ of habeas corpus to obtain custody of his son, Donovan, from Mrs. Walker. This writ was made returnable before Chancellor Dale in Marion County, Mississippi. The case was set for trial on September 28, 1995, within the time that Chancellor Buffington was outside the state. For various reasons the case was continued until October 5, 1995, at a time when Chancellor Buffington was back in his district. Walker filed a response to the Writ of Habeas Corpus and a cross petition sought guardianship for all three of the children.

At the conclusion of the trial the Chancellor granted custody of Donovan to his father, but scheduled a gradual transition by way of a detailed visitation schedule which also included visitation by Walker with Donovan after the transfer was completed. Walker lost on all of her pleadings.

## I.

### DID THE SPECIAL JUDGE HAVE AUTHORITY TO ACT AFTER THE EXPIRATION OF HIS APPOINTMENT PURSUANT TO MISS. CODE ANN. § 9-1-105?

Walker contends that when Chancellor Dale continued the case due to schedule conflicts from September 28 to October 4 and when he tried the case through its finality in late November 1995, he exceeded his authority under his special appointment. It is Walker's argument that since Chancellor Dale lacked authority his judgment is void.

Chief Justice Hawkins made the special appointment pursuant to Miss. Code Ann. § 9-1-105 (1994), which reads in relevant part:

> (1) Whenever any judicial officer is unwilling or unable to hear a case or unable to hold or attend any of the courts at the time and place required by law by reason of the physical disability or sickness of such judicial officer, by reason of the absence of such judicial officer from the state, by reason of the disqualification of such judicial officer pursuant to the provision of Section 165, Mississippi Constitution of 1890, or any provision of the Code of Judicial Conduct, or for any other reason, the Chief Justice of the Mississippi Supreme Court, with the advice and consent of a majority of the justices of the Mississippi Supreme Court, may appoint a person as a special judge to hear the case or attend and hold a court.
>
> . . . .
>
> (8) The order appointing a person as a special judge pursuant to this section shall describe as specifically as possible the duration of the appointment.
>
> (9) A special judge appointed pursuant to this section shall take the oath of office, if necessary, and shall, for the duration of his appointment, enjoy the full power and authority of the office he is appointed.

Thus, even though a continuance resulted in the case being heard on October 4, 1995, (time frame of appointment terminated), instead of September 28, 1995, (time frame of appointment), Walker

contends that Chancellor Dale lacked authority to hear the case.

In a letter to Walker's counsel, Chancellor Dale stated that he properly maintained authority to preside over the case throughout the trial court proceedings. Chancellor Dale stated that Chief Justice Hawkins's appointment carried continuing power for handling cases filed and assigned to the particular appointed Chancellor. The expiration of the power applied only to cases arising beyond the authorized date of Chancellor Buffington's return. Chancellor Dale concluded that assigning the case to Chancellor Buffington at his return would create a chaotic situation rather than an expeditious one.

Walker cites *Hall Commission Co. v. Crook*, 40 Miss. So. 1006 (1905), as support that Chancellor Dale's authority ended when Chancellor Buffington returned to office. In *Hall Commission Co.*, the Governor of Mississippi appointed the Honorable W.R. Harper as acting Chief Justice since the Mississippi Supreme Court Chief Justice was ill. This Court noted that the appointment was not a specific appointment to preside over a specific case, but rather, was a general appointment to preside in all cases, but during the limited time of the Chief Justice's illness. *Hall Commission Co.*, 40 Miss. So. at 1007. This Court stated:

> The law seems clear that a special judge appointed to try a special case will take part in the decision of everything relating to that cause . . . . That is not this case. Here, clearly, Judge Harper's power to act as a special judge was limited to the period of the sickness of the chief justice. Immediately upon the termination of that disability-- that is to say, when the chief justice resumed his duties-- the power of the special judge at once terminated.

*Id*. 40 So. at 1007. Applying the law and reasoning found in *Hall Commission Co.*, Chancellor Dale's authority to act as a chancellor for the Thirteenth Chancery Court District terminated when Chancellor Buffington resumed the bench on October 1, 1995. Since the case sub judice was filed, and proper venue was proper, in the Thirteenth Chancery Court District, Chancellor Buffington, not Chancellor Dale, was the proper presiding judge. Therefore, Chancellor Dale's judgement is void.

While having had no other opportunity to specifically address termination of authority of a specially appointed judge, this Court has stated that a judges with color of authority act as de facto judges and their rulings are valid. *Crocker v. Sears, Roebuck & Co.*, 346 So.2d 921 (Miss. 1977). In *Crocker*, the appellant claimed that a county judge of Lauderdale County lacked authority to sit as circuit judge of the Eighth Judicial District and that his judgement was void. While noting that the source of the judge's authority under either the statute appointing a special judge acting for a sick or disabled judge or filling in judicial vacancies was not apparent from the record, this Court stated that the judge was a *de facto* circuit judge under Miss. Code Ann. § 25-1-37, which states:

> The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not

Miss. Code Ann. § 25-1-37. *Crocker* defined a de facto officer as "one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto." *Id.* at 922 (*quoting Adams v. Mississippi State Bank*, 23 So. 395, 398 (Miss. 1898); *Raper v. State*, 317 So.2d 709, 711 (Miss. 1975)). Citing *Bird v. State*, 122 So.

539, 540 (Miss. 1929), *Crocker* stated, "It is well settled in this state that acts of a de facto judge are valid, regardless of whether he was properly appointed or qualified or not . . . ." *Id.* at 922-23.

In the recent case *Nelson v. State*, Miss. 626 So.2d 121 (1993), this Court addressed whether a special judge had authority to hear a case based on recusal where the court failed to give proper notice to this Court pursuant to Miss. Code Ann. § 9-1-105(5). *Nelson* upheld *Crocker* and *Bird*, stating that "one who acts pursuant to the color of authority, though without legal authority, nevertheless performs valid acts. Any challenge regarding the validity of an actor's appointment must be brought against the actor in proceedings contesting the right of office." *Nelson*, Miss. 626 So.2d at 125. *See also Upchurch v. City of Oxford*, Miss. 17 So.2d 204 ( 1944).

Since the *Hall Commission Co.* decision in 1905, the Mississippi Legislature has enacted § 25-1-37 stating that a de facto officer's decision is binding even if the officer was not a *de jure* officer. This Court, dating back from at least the mid-twentieth century, has on many occasions upheld decisions of judicial officers acting as such but not necessarily under appropriate authority. In the case sub judice, Chancellor Dale was appointed special judge to hear cases arising in Chancellor Buffington's absence. This case was filed during Chancellor Buffington's absence and was scheduled for hearing during his absence. The case was continued for approximately five days due to the attorney conflicts in scheduling. At the very least Chancellor Dale properly presided over the case until October 1, 1995. However, common sense and crowded dockets dictate that Chancellor Dale did not supersede his power in presiding over the case even when the regular chancellor returned. Clearly, the regular chancellor would have duties arising on and after October 1, 1995. No conflict of interest or act of impropriety as to Chancellor Dale appears within the record. Chancellor Dale presided over the case sub judice as an officer of the court at least as an officer de facto. Therefore, this part of Walker's assigned error is without merit.

## II.

**WHETHER THE TRIAL COURT ERRED IN FAILING TO MAKE ANY FINDING WHATSOEVER AS TO THE BEST INTEREST OF THE MINOR CHILD INVOLVED IN THESE PROCEEDINGS?**

## III.

**WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT HARRY SARTIN HAD ABANDONED DONOVAN SARTIN BY REFUSING TO PAY ANY CHILD SUPPORT FOR OVER FOUR (4) YEARS AND BY HAVING FAILED TO HAVE MADE ANY CONTACT OR VISITED WITH THE MINOR?**

## IV.

**WHETHER THE TRIAL COURT ERRED IN NOT MAKING ANY FINDINGS WHATSOEVER AS TO THE CONDUCT OF HARRY SARTIN BEING IMMORAL AS TO BE DETRIMENTAL TO THE MINOR?**

Since all three of these issues are related to the same overall issue, they will be treated as one.

Walker contends that the chancellor merely applied the presumptive rule that the natural parent have

custody of a child rather than consider the best interests and welfare of Donovan when awarding Sartin custody. Walker contends that Donovan's best interests lie in being in custody with his two half-sisters under Walker's care. Walker contends that Sartin abandoned Donovan. Furthermore, Walker contends that Sartin is immoral and detrimental to Donovan.

This Court has on numerous instances dealt with child custody cases between a parent and a third party, including grandparents. In *Rutland Pridgen*, 493 So.2d 952, 954 (Miss. 1986), this Court stated:

> The general rule is: It is presumed that the best interest of a child will be preserved by his or her remaining with the surviving parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have custody. *Stoker v. Huggins*, 471 So.2d 1228 (Miss. 1985); *Naveda v. Ahumada*, 381 So.2d 147 (Miss. 1980); *Milam v. Milam*, 376 So.2d 1336 (Miss. 1979); *Turner v. Turner*, 331 So.2d 903 (Miss. 1976).
>
> Simply stated, the natural parent is entitled to custody, as against a third party, unless one of the above conditions is clearly proved.

*Rutland*, 493 So.2d at 954. Furthermore, grandparents have no right to custody of a grandchild against a natural parent. *Etheridge v. Yawn*, 605 So.2d 761, 764 (Miss. 1992).

In *Etheridge*, this Court defined "abandonment"

> as any course of conduct on the part of a parent evincing a settled purpose to forgo all duties and relinquish all parental claims to the child. It may result from a single decision by a parent at a particular point in time. It may arise from a course of circumstances. The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child. *See Bryant v. Cameron*, 473 So.2d 174, 178-79 (Miss. 1985); *Petit v. Holifield*, 443 So.2d 874, 878 (Miss. 1984); *Ainsworth v. Natural Father*, 414 So.2d 417 (Miss. 1982).

*Ethridge*, 605 So.2d at 764. Furthermore, the party charging abandonment must prove the charge by clear and convincing evidence. *Id*. at 764; *Bryant v. Cameron*, 473 So.2d at 178; *Petit*, 443 So.2d at 878.

Since the chancellor properly stated the relevant law, this Court does not proceed with a de novo review. After citing all relevant law, the chancellor concluded that the evidence failed to clearly and convincingly show that Sartin had a settled purpose to abandon and relinquish all duties and parental claims to Donovan. When reviewing the chancellor's factual assessment of the case, this Court does not ask "how we would have decided the case *ab initio* but whether there be credible proof from which a rational trier of fact may have found abandonment by clear and convincing evidence." *Etheridge*, Miss. 605 So.2d at 764. After assessing the facts before the court, the chancellor stated that Walker's witnesses failed to prove Sartin abandoned Donovan. The chancellor noted that Walker's witnesses' testimony was based on hearsay of what Cynthia had said, and not on personal knowledge. On the other hand, Sartin testified that he had a continuing relationship with Donovan

and also supported Donovan, though on an infrequent basis. The chancellor concluded that since Cynthia unfortunately was unable to testify, Walker failed to overcome the presumptions with clear and convincing evidence as required by law. After reviewing the record, this Court must conclude that the chancellor neither failed to properly assess the facts or apply applicable law as to abandonment.

Walker also contends that Sartin is immoral so as to be detrimental to Donovan. As proof, Walker offered evidence that Sartin has used cocaine and had a violent domestic dispute with Cynthia while they lived together. The chancellor specifically stated that the evidence before the court failed to raise any serious assertions. This Court agrees. Both incidents occurred more than three years ago. Sartin testified that in the last few years he had passed several drug tests. While the domestic dispute was unfortunate, the incident certainly does not rise to the level that Sartin is immoral and detrimental to Donovan.

## CONCLUSION

The chancellor had jurisdiction to hear this case pursuant to Chief Justice Hawkins's appointment. When the case was continued, and the hearing took place after Chancellor Buffington's return, Chancellor Dale at the very least was acting under the color of authority as a de facto judicial officer of the court. We will not reverse a chancellor on a finding of fact unless there is manifest error. Had the Chancellor declined to give the custody of Donovan to Harry Sartin, and Sartin appealed on this same record we would do there what we do here and affirm.

**AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**