605 So.2d 761 (1992)
James Kenneth ETHREDGE, Jr., Natural Father of Joseph Patrick Ethredge, a Minor
v.
Willie Dean YAWN.
No. 90-CA-1177.
Supreme Court of Mississippi.
July 29, 1992.
*762 Penny Jones Alexander, Petal, for appellant.
Larry Buffington, Collins, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal arises from a battle for the custody of a now eight-year-old boy fought between the boy's natural father and his step-grandmother. Principally at issue is whether the father legally abandoned his child. The Chancery Court held that he did but, in so doing, misapprehended our legal standards and the proof they demand.
We reverse and render.

II.
Joey came into this troubled universe on February 11, 1984. His mother, Theresa Maria Yawn Stapleton ("Theresa"), and his father, James Kenneth Ethredge, Jr. ("Jim Ethredge"), were not married. Joey's original birth certificate reflected he was "Joseph *763 Patrick Stapleton," as his mother was a single parent. His birth certificate was later changed to "Joseph Patrick Ethredge," reflecting his father's last name.
At the time, Theresa was living with her father and step-mother, Jim Yawn and Willie Dean Yawn ("Dean"). Upon leaving the hospital, Theresa brought young Joey into this home where he has lived ever since, though she has not.
Ethredge said when Joey was born, he had wanted to marry Theresa but she refused and went her way. After Joey's birth, the Yawns called Ethredge and told him of the child, and since Joey was several months old, Ethredge has seen him on most alternate weekends and one week out of each month during the summer. While Joey was young, Ethredge even stayed in the Yawns' home overnight while visiting. Ethredge gave Jim and Dean Yawn some financial support for Joey, much of which was in kind such as clothes and toys.
In 1985, Theresa petitioned the Chancery Court of Covington County, Mississippi, that her father and step-mother be appointed guardians for Joey. On April 17, 1985, Ethredge, as Joey's father, executed a waiver of process and entry of appearance in the guardianship action and thereafter made no contest. Ethredge says Jim Yawn was a friend he could trust and respect. On June 17, 1985, the Chancery Court entered its decree, appointing Jim Yawn, Joey's maternal grandfather, and Dean Yawn, Joey's step-grandmother, as co-guardians for Joey. For reasons not entirely explained, however, the guardians never took nor posted a guardianship bond and, of course, no letters of guardianship issued.
Jim Yawn died in April of 1988. Back in August of 1985, Jim Ethredge had married Susan Norwood. In time, Ethredge became dissatisfied that Joey was remaining with his step-grandmother only and began to importune her that Joey be allowed to come and live with Susan and him. Dean Yawn resisted, citing what was undeniably the fact, that she was the only mother Joey had ever known and that she had been the maternal figure in his life since he was a week old. This did not satisfy Ethredge, who returned to Chancery Court on May 1, 1990, and demanded that the incompleted guardianship, such as it was, be dissolved and that as Joey's natural father, he be awarded permanent custody of Joey, at the time, a little shy of six years, three months old.
Ethredge had process issue for Dean Yawn, the step-grandmother, and for Theresa Eubanks, Joey's mother. Somewhere along the way, Theresa had married and divorced a man named Ronnie Eubanks, but had kept his last name. Dean Yawn answered and denied the essential allegations of the complaint but rather urged that the Court order "that the custody of said child remain with her to insure a fit and stable environment." Theresa answered and urged that Joey be allowed to remain "in the custody of his grandmother and his natural mother." It appears Theresa had moved back home with her mother once Ethredge commenced the present proceedings. At trial, however, it became clear the contesting parties were Jim Ethredge, Joey's natural father, and Dean Yawn, his step-grandmother.
In the end, the Chancery Court held that Ethredge had legally abandoned his son and placed this upon a single ground: the filing of the waiver in the guardianship. Because the point is important, we quote from the Court's ruling:
The Court finds that Mr. Ethredge gave up Joey and signed a waiver and Joey  or rather, signed a waiver and a guardianship was established and that by itself constituted abandonment of Joey.
In the final judgment entered October 26, 1990, the Court reiterated the point, holding that James K. Ethredge, Jr. "signed a waiver" and
that by the execution of said document this action taken by the natural ... father voluntarily relinquishing the custody of the child constituted an abandonment of Joseph Patrick Ethredge.
The Court proceeded to provide Ethredge with visitation rights.
Unhappy with this judgment, Ethredge now appeals.

*764 III.
No one disputes that the natural parents of children have a predominant and primary interest in their nurture, care and custody. See, e.g., White v. Thompson, 569 So.2d 1181, 1183 (Miss. 1990); Simpson v. Rast, 258 So.2d 233, 236 (Miss. 1972). This interest rises to the level of a legal presumption that custody be with him or her, though one that may be rebutted. This presumption is of long standing and is available to Jim Ethredge, though he was not married to Joey's mother at the time of Joey's birth, nor has he ever enjoyed actual custody. See Aycock v. Hampton, 84 Miss. 204, 36 So. 245 (1904); Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900).
Grandparents have no right of custody of a grandchild, as against a natural parent, a premise reflected in our frequent statements, in custody contests between a parent (or parents) and grandparents, the parent(s) prevail absent a showing they have abandoned the child or are otherwise totally unfit. See Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Rutland v. Pridgen, 493 So.2d 952, 954-55 (Miss. 1986); Owens, By and Through, Mosley v. Huffman 481 So.2d 231, 242 (Miss. 1985); Stoker v. Huggins, 471 So.2d 1228, 1229 (Miss. 1985); Thomas v. Purvis, 384 So.2d 610, 612-13 (Miss. 1980); Pace v. Barrett, 205 So.2d 647, 649 (Miss. 1968). If this be true where the party claiming custody is a grandparent, it is more so where, as here, the contestant is a step-grandmother. In those cases where the Court places custody with the grandparent, that judgment arises from sequential findings of legal forfeiture by the natural parent(s) and that the best interests of the child suggest such custody. No grandparent has a right to custody.
Courts may intervene and deny a parent his child under quite limited circumstances. No one contends here that Jim Ethredge is mentally or morally unfit to have custody of his child. The charge is abandonment, and the Chancery Court found Ethredge had in law abandoned Joey. Our law defines "abandonment" as any course of conduct on the part of a parent evincing a settled purpose to forgo all duties and relinquish all parental claims to the child. It may result from a single decision by a parent at a particular point in time. It may arise from a course of circumstances. The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child. See Bryant v. Cameron, 473 So.2d 174, 178-79 (Miss. 1985); Petit v. Holifield, 443 So.2d 874, 878 (Miss. 1984); Ainsworth v. Natural Father, 414 So.2d 417 (Miss. 1982).
Denying a parent his child is a matter no court does lightly. Society demands and expects a proceeding whose result is worthy of a high level of confidence, and so that we require abandonment be proved by more than the ordinary preponderance of the evidence. White quotes Rodgers v. Rodgers, 274 So.2d 671, 673 (Miss. 1973), to the effect that a child's best interest lies with parental custody, that this is a legal presumption and that "in order to overcome this presumption there must be a clear showing... ." White, 569 So.2d at 1183. The more conventional statement is the party charging abandonment must prove his charge "by clear and convincing evidence." Bryant v. Cameron, 473 So.2d at 178; Petit v. Holifield, 443 So.2d at 878.
Nevertheless, where there has been a finding of abandonment, our review on the factual points is as familiar as it is limited. We ask not how we would have decided the case ab initio but whether there be credible proof from which a rational trier of fact may have found abandonment by clear and convincing evidence. See, e.g., White v. Thompson, 569 So.2d at 1184; Bryant v. Cameron, 473 So.2d at 179; Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). On the other hand, where on review it is apparent the court below has misapprehended the controlling rules of law or has acted pursuant to a substantially erroneous view of the law, we will proceed de novo and promptly reverse.
By resort to the decision below, we think it important the finding of abandonment appears no way to rest upon a finding *765 that Jim Ethredge has financially abandoned Joey. See Smith v. Watson, 425 So.2d 1030, 1035 (Miss. 1983). Ethredge insists all along he has contributed to his child's support, and the Court found that
he has contributed, although I do not think Mr. Ethredge has contributed as much as he should have to the support and maintenance of Joey.
Failure to pay child support without more is insufficient predicate for a finding of abandonment. In re Adoption of A Female Child, 412 So.2d 1175 (Miss. 1982).
The Court predicated its custody finding on the single act of Jim Ethredge signing the waiver incident to the guardianship proceeding. In his bench ruling, the Court stated, "That by itself constituted abandonment." In the final judgment, the Court reiterated that "by the execution of said document" Jim Ethredge had "voluntarily relinquish[ed]" his custody rights to Joey and this "constituted an abandonment." For the sake of consistency, the final judgment of the Court found that Theresa had also legally abandoned Joey by her action incident to the guardianship.
We turn to the said-to-have-been-fatal guardianship waiver. We find first that Theresa filed the petition for appointment of guardian back on April 18, 1985, and affirmatively represented to the court that her father and step-mother were fit and capable persons to continue the custody of Joey. On the other hand, Jim Ethredge filed a routine waiver of process.[1] We find nothing in this waiver that constitutes a joinder in the petition or an agreement that its prayer should be granted. What  and all  the waiver effects is an entry of an appearance and an agreement that the Chancery Court may proceed with the matter as it may deem appropriate without further notice to him. The Chancery Court made no finding regarding or reference to any facts and circumstances surrounding this waiver but appears to have rested upon this single act. Ethredge explains without contradiction that he was unmarried at the time:
I was single. I was working. I didn't believe I could care for the child the way he should be cared for. Dean and Jim offered to setup a guardianship for him. At that point in time I believe that that was the best thing for the child, so I did that.
Ethredge denies he did anything suggesting the arrangement would be permanent.
Without doubt, a parent may with final effect abandon his or her child with a single act. Most familiar is the consent to adoption. Miss. Code Ann. § 93-17-5 (1972). But any other single act may suffice if it be such that it will allow a court to find by clear and convincing evidence that the abandoning parent has a settled purpose to forgo all duties and relinquish all parental claims to the child. Bryant v. Cameron, 473 So.2d at 179; Petit v. Holifield, 443 So.2d at 878. We trust it requires no explanation that a waiver of process incident to a guardianship proceeding falls far short of the mark.
Much is made of the fact that the Yawns failed to complete all formalities incident to the guardianship and, indeed, this is so. They never filed an oath of guardian. They never posted bond. The clerk never issued letters of guardianship. But this in the end is not so important, for even had they taken these steps, the mere appointment of a guardian of the person and/or estate of a minor does not of itself strip a parent of all of his or her rights in the child, nor is there anything in the nature of such guardianship that it must last until adulthood, come what may. We have no *766 doubt there are occasions when a parent or parents for whatever reason may find it necessary that a guardian be appointed for their child or children and some years later, when the circumstance suggesting the guardianship has been resolved, petition successfully that it be dissolved.
None of this is to deny that Dean Yawn stands in loco parentis to young Joey and has done so for all except the first week of his life. It is difficult, even heartwrenching, to think of taking this child from someone who, without blood kinship or obligation to do so, has taken him in and raised him from birth. The Chancery Court in its anguished decision repeatedly found that Dean Yawn and Jim Ethredge and, indeed, Theresa Yawn Eubanks, all love this child, and it charged in the end that these three not
fight among yourselves... . Try to treat each other with respect. If you don't want to treat each other with respect because you don't like each other, at least do it for the sake of this little boy.
This is the wisest part of the Chancellor's degree and it is equally applicable to the judgment the law compels we this day render.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] In relevant part, the waiver reads:

The undersigned Affiant [James Kenneth Ethredge, Jr.] states that he is the father of the minor child, Joseph Patrick Stapleton, in the above styled and numbered cause now pending in the Chancery Court of Covington County, Mississippi. Affiant further states that he has examined a copy of the Petition filed in this cause, and that he does hereby waive the service of process upon him in said cause, and submits to the jurisdiction of the Court for all purposes and for the same effect as if process had been personally served upon him for more than thirty (30) days prior to this date; and agrees that the Court might hear said cause at any time, in vacation or term time, without further or other notice to him.