630 So.2d 44 (1993)
Darren McKEE
v.
Natalie (McKee) FLYNT.
No. 91-CA-0987.
Supreme Court of Mississippi.
December 23, 1993.
*45 Joseph C. Langston, Langston Langston Michael & Bowen, Booneville, for appellant.
Michael D. Cooke, Iuka, for appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
This is a divorce case appealed from the Chancery Court of Tishomingo County. The chancellor awarded Natalie McKee (Flynt)[1] a divorce from her husband, Darren McKee, on the ground of habitual cruel and inhuman treatment on September 9, 1991, and awarded custody of the couple's child, Haley, to both the maternal and paternal grandparents, with the natural parents having visitation rights. From this ruling, Darren appeals to this Court assigning as error the following:
I. WHETHER THE TRIAL COURT ERRED IN GRANTING CUSTODY OF THE MINOR CHILD TO THE GRANDPARENTS, NON-PARTIES, AND NOT GRANTING CUSTODY OF THE CHILD TO THE APPELLANT.
II. WHETHER THE TRIAL COURT ERRED IN AWARDING THE APPELLEE A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT.
III. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT A DIVORCE ON THE GROUNDS OF ADULTERY.
IV. WHETHER THE TRIAL COURT ERRED IN NOT RECOGNIZING THE VALIDITY OF A POST-NUPTIAL AGREEMENT ENTERED INTO BY THE PARTIES.

II. STATEMENT OF THE FACTS
Darren McKee and Natalie McKee (Flynt) were married on January 10, 1987. At the time of the marriage, Natalie was sixteen (16) years old, and was pregnant; Darren was twenty-one (21) years old. On January 31, 1987, Natalie suffered a miscarriage. Darren had hit her in the stomach; however, there was no evidence admitted that proved this was the cause of the miscarriage. Also, Darren denied hitting her in the stomach. In September of 1987, Natalie again became pregnant and Haley Elizabeth was born on May 18, 1988. Natalie left Darren on October 26, 1988, and took Haley. During the entire separation, from October 1988, until September, 1989, Natalie and Haley lived with Natalie's parents.
During this period of separation, the parties filed for a divorce which was later dismissed. In dismissing this action, the parties signed on September 22, 1989, what they have termed a "post-nuptial" agreement, in consideration for their mutual promises that the divorce action be dismissed. In addition, this agreement provided that, should the parties *46 in the future separate or obtain a divorce, Darren would have exclusive custody of the minor child, Haley, and would receive all of the couple's jointly acquired property, with the exception of Natalie's clothes and other personal items.
Following these events, the couple reconciled. This reconciliation was to be short-lived. On November 4, 1989, Natalie again left Darren and returned to live with her parents. This time Natalie did not take Haley with her to her parents.
On November 14, 1989, Natalie again filed for divorce. She stated her grounds for divorce as habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences. In this complaint, Natalie sought custody of Haley and also payment of child support. In his answer to Natalie's complaint, Darren cross-complained for divorce on the grounds of adultery, or in the alternative, irreconcilable differences. Darren also prayed for custody of Haley.
The trial of the case began on May 2, 1990. Prior to the testimony of any witnesses, Darren withdrew his cross-bill for divorce, but continued to seek custody of Haley. At the conclusion of this day's testimony, the chancellor continued the case until June 28, 1990. However, this case was not concluded until June 6, 1991. One reason for this long delay between the first and second day of trial was Natalie's pregnancy and birth of her second child, Erica, on November 15, 1990. Natalie admitted that the father of this child was not her husband, Darren.
Following the first day of trial, Darren amended his answer to again include a complaint for divorce on the grounds of adultery, or in the alternative, irreconcilable differences.
The second and final day of this trial was on June 6, 1991. On August 13, 1991, the chancellor entered his opinion. In this opinion, he granted Natalie a divorce from Darren on the ground of habitual cruel and inhuman treatment. Further, he awarded custody of the minor child, Haley, to the grandparents with custody to be divided between both the maternal and paternal grandparents. The chancellor's opinion was incorporated into the final Decree of Divorce entered on September 9, 1991.

III. ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN GRANTING CUSTODY OF THE MINOR CHILD TO THE GRANDPARENTS, NON-PARTIES, AND NOT GRANTING CUSTODY OF THE CHILD TO THE APPELLANT.

A. Parties' Contentions
Both parties contend that the chancellor in this case erred in awarding to the grandparents, non-parties to this action, the custody of the minor child, Haley McKee. Both Natalie and Darren submit that one of them is the proper person to have custody of Haley and request that this Court reverse and render a judgment granting custody to that person. Natalie also argues, in the alternative, that this Court should remand the case to the chancery court on the issue of child custody.

B. Applicable Law
The law has long been in Mississippi that the natural parents of a child have the right to nurture and care for their child. Simpson v. Rast, 258 So.2d 233, 236 (Miss. 1972). The parent is the child's natural guardian; however, if this person is not fit to carry out the responsibilities of this guardianship, the chancery court may appoint a suitable person to fulfill such duties. Carter v. Taylor, 611 So.2d 874, 876 (Miss. 1992). See also Miss. Code Ann. § 93-13-1 (1972).
This Court considers the denying of a parent the custody his or her child a serious matter and does not treat this issue lightly. Ethredge v. Yawn, 605 So.2d 761, 764 (Miss. 1992). This Court noted in Ethredge that:
In those cases where the Court places custody with the grandparent, that judgment arises from sequential findings of legal forfeiture by the natural parent(s) and that the best interests of the child suggest such custody. No grandparent has a right to custody.
Ethredge, 605 So.2d at 764. In a custody dispute between the parents of a child and *47 that child's grandparents, there is a presumption that it is in the best interest of that child to remain with the natural parents.
In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral [as] to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child.
White v. Thompson, 569 So.2d 1181, 1183-84 (Miss. 1990) quoting Rodgers v. Rodgers, 274 So.2d 671, 673 (Miss. 1973). See also, Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Stoker v. Huggins, 471 So.2d 1228, 1229 (Miss. 1985). Absent clear proof of one of the above circumstances, the natural parent is entitled to custody of his or her child. Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986). More recently, this Court has stated:
Grandparents have no right of custody of a grandchild, as against a natural parent, a premise reflected in our frequent statements, in custody contests between a parent (or parents) and grandparents, the parent(s) prevail absent a showing they have abandoned the child or are otherwise totally unfit.
Ethredge, 605 So.2d at 764. See also, Carter, 611 So.2d at 876; Westbrook v. Oglesbee, 606 So.2d 1142, 1147 (Miss. 1992).
In the instant case, the chancellor did not make a specific finding that either parent, Darren or Natalie, was unfit. In his opinion, the chancellor stated:
The Court is further of the opinion concerning the welfare of this three-year-old baby girl, who has since the separation been living with both parties, one week each, and considering this, the Court is of the opinion and so holds, based upon all the testimony that under the Albright versus Albright case, neither party at this time should have the physical custody of this child. The proof shows that almost since the birth of the child that the grandparents have looked after, nurtured, and cared for this baby. The Court is of the opinion that it would be in the best interest of the child at this time that the grandparents, both the maternal and paternal grandparents, should have the physical custody of this child with the parents of the natural mother having the custody for six months, and the parents of the natural father having custody for six months.
The chancellor did not make a finding of unfitness of these parents. Specifically, he did not find that either of these parents had abandoned the child, had participated in conduct so immoral as to be a detriment to the child, or that they were mentally unfit or unfit otherwise to have custody of the child. Aside from applying the Albright[2] factors to the testimony in this case, he did not provide a basis for his determination that Haley should be with her grandparents rather than with either of her natural parents. Nor did he substantiate his reasoning as to what factors and evidence he relied upon in making his decision.
The instant case was a divorce case in which the parties, Natalie and Darren, were contesting custody between each other. As such, each tried to prove that he or she was the better parent; the issue of parental unfitness was never raised. While each side presented voluminous testimony as to his or her suitability and fitness to have custody of Haley, neither made a determined effort to prove that the other was so unfit as to terminate his or her parental rights.

C. Conclusion
Because the issue of the unfitness of the parents was not litigated, and because of the chancellor's failure to make a specific determination that these parents are both so totally unfit as to relinquish their right to have custody of their minor child, this Court reverses and remands for a redetermination of the issue of custody and support of the minor child, Haley McKee. More than two years have passed since the chancellor made his finding in this case. With this in mind, the chancellor, on remand, should consider the issue of child custody in light of the present factors and circumstances surrounding the parties.

*48 II. WHETHER THE TRIAL COURT ERRED IN AWARDING THE APPELLEE A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT.

III. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT A DIVORCE ON THE GROUNDS OF ADULTERY.

A. Parties' Contentions
Darren submits to this Court that it was error for the chancellor to grant Natalie a divorce on the ground of habitual cruel and inhuman treatment due to a lack of evidence to support this finding. Darren further contends that he should have been awarded a divorce from Natalie on the ground of adultery. Natalie counters Darren's arguments by stating that it was not error for the chancellor to grant her a divorce on the ground of habitual cruel and inhuman treatment because there was more than sufficient evidence presented at trial to support this ruling. Also, Natalie denies that Darren should be awarded a divorce on the ground of adultery.

B. Applicable Law
In a domestic case, the chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied. Bland v. Bland, 620 So.2d 543, 544 (Miss. 1993); McAdory v. McAdory, 608 So.2d 695, 699 (Miss. 1992); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986). In cases, such as the one at bar, containing conflicting testimony, the chancellor, as the trier of fact, is the judge of "the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." Rainey v. Rainey, 205 So.2d 514, 515 (Miss. 1967). A charge of habitual cruel and inhuman treatment may be sustained by a preponderance of the evidence, however, the evidence to support the charge must show "something more than unkindness or rudeness or mere incompatibility or want of affection." Smith v. Smith, 614 So.2d 394, 396 (Miss. 1993), quoting Wires v. Wires, 297 So.2d 900, 902 (Miss. 1974). The proof must show that the behavior of the offending spouse was of a "systematic and continuous" nature. Parker v. Parker, 519 So.2d 1232, 1234 (Miss. 1988), citing Day v. Day, 501 So.2d 353 (Miss. 1987). See also, Burnett v. Burnett, 271 So.2d 90, 92-93 (Miss. 1972). While ordinarily one act or an isolated incident will not establish a charge of habitual cruel and inhuman treatment, "one incident of personal violence may be of such a violent nature as to endanger the life of the complainant spouse and be of sufficient gravity to establish the charge of habitual cruel and inhuman treatment." Ellzey v. Ellzey, 253 So.2d 249, 250 (Miss. 1971). There must exist some causal connection between the habitual cruel and inhuman treatment and the parties' separation. Fournet v. Fournet, 481 So.2d 326, 329 (Miss. 1985). However, application of this rule was limited by Bias v. Bias, 493 So.2d 342, 345 (Miss. 1986).
Absence of proof of proximate cause does not in logic negate the reality of habitual cruel and inhuman treatment, which may indeed have been a proximate cause of harm to the health and physical well being of the plaintiff (as distinguished from the actual cause of the separation). The chancellor's primary inquiry must in justice be into the ground for divorce. That inquiry requires a dual focus: upon the conduct of the offending spouse and the impact of that conduct upon the plaintiff. If the requisite impact upon plaintiff is proved, there is little reason why we should arbitrarily dismiss because of the proximate cause of separation rule which no legislature has mandated.
Bias, 493 So.2d at 345. See also Faries v. Faries, 607 So.2d 1204, 1209 (Miss. 1992). Bias further holds that acts occurring after the parties have separated may be considered in the charge of habitual cruel and inhuman treatment. Bias, 493 So.2d at 345.
In the instant case, the record is replete with evidence indicating that during her marriage to Darren, Natalie was subjected to both physical and mental abuse. While Darren admits only two instances of physical abuse towards his wife, Natalie testified to numerous occasions of Darren's physical violence. Only one instance of physical violence had any actual eye witnesses, however, Natalie *49 produced several witnesses who testified to bruises and scratches on her body. In addition to physical attacks, evidence was adduced that Natalie was also subjected to mental and emotional abuse.
Finally, Natalie testified that she did not think it was possible for her to continue to live with Darren and maintain her health and peace of mind. Considering the entire record in this case, there is more than sufficient evidence for the chancellor to grant Natalie a divorce on the ground of habitual cruel and inhuman treatment.
Darren contends that instead of granting Natalie a divorce on the ground of habitual cruel and inhuman treatment, the chancellor should have granted him the divorce on the ground of adultery. In the instant case, there is no doubt that Natalie committed adultery. She admitted this on the witness stand and admitted that her second child was not fathered by Darren.
The fact that one spouse is granted a divorce based upon the other spouse's adultery is not decisive on the issue of child custody. An adulterous parent is not per se precluded from having child custody. The best interests of the child, not marital fault, should be "the primary guide in custody determinations." Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). This Court stated in Carr:
This Court notes that moral fitness of a parent encompasses the charge of adultery. But moral fitness is but one factor to be considered, and it is a factor worthy of weight in determining the best interest of the child. Adultery of a parent may be an unwholesome influence and an impairment to the child's best interest, but on the other hand, may have no effect. The trial court should consider this factor along with all others when making original custody determinations.
Carr, 480 So.2d at 1123.
The case at bar is strikingly similar to Pellegrin v. Pellegrin, 478 So.2d 306 (Miss. 1985). In Pellegrin, the wife sued for a divorce on the ground of habitual cruel and inhuman treatment. The husband sued for divorce on the grounds of adultery, habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences. Both spouses sought custody of their children. The chancellor granted the wife a divorce on her claim. Pellegrin, 478 So.2d at 307. The husband appealed, claiming that he should have been the one awarded the divorce. Id. While this case does not discuss the evidence presented at trial, this Court refused to reverse the chancellor's decision, stating:
The chancellor's finding is presumptively valid; because both parties desired a divorce and because to whom the divorce is granted is not decisive of the real issue of custody, we find that the divorce was properly granted.
Id. at 308 (emphasis in original).

C. Conclusion
Natalie presented ample proof in this case to justify an award to her of a divorce on the ground of habitual cruel and inhuman treatment. Both parties in this case wanted a divorce, and both parties are now divorced from each other. Natalie has remarried since the chancery decree. This Court affirms the chancellor's award to Natalie of a divorce on the ground of habitual cruel and inhuman treatment.

IV. WHETHER THE TRIAL COURT ERRED IN NOT RECOGNIZING THE VALIDITY OF A POST-NUPTIAL AGREEMENT ENTERED INTO BY THE PARTIES.

A. Parties' Contentions
Darren and Natalie had previously filed for a divorce in the Chancery Court of Tishomingo County but they decided to try to reconcile their differences and live together once again as husband and wife. To evidence this reconciliation, on September 22, 1989, the parties entered into an agreement which they refer to as a "Post-Nuptial Agreement." In this agreement, each party promised to dismiss his or her complaint for divorce against the other. More importantly, this agreement provided that, should the parties in the future "separate with the intention to no longer cohabit or to obtain a divorce," Natalie was to receive her clothes and personal items and Darren was to get all other property of the *50 parties. This agreement also granted Darren physical custody, care, and control of their minor child, Haley McKee.
Darren contends that this post-nuptial agreement is in essence the same thing as an ante-nuptial agreement. As ante-nuptial agreements are supported and enforced by the chancery courts of this state, he submits this agreement should be so enforced. Natalie denies that it was ever her intention, by signing this agreement, to relinquish custody of her daughter. Natalie contends that this agreement was not enforceable and was the product of overreaching, duress, and undue influence on the part of Darren.

B. Applicable Law
As to the custody issue, this Court has held other somewhat similar agreements dealing with the issue of child custody to be void as against public policy. In McManus v. Howard, 569 So.2d 1213, 1214 (Miss. 1990), the parties entered into a "Property Settlement and Child Custody Agreement" which provided that the wife would be automatically divested of custody of the minor children and the husband vested with such custody if the wife removed the children from their home town without the agreement of both parties. This Court held such a provision to be unenforceable. McManus, 569 So.2d at 1216. This Court noted that while ordinarily the laws favor agreement between parties, absent fraud or overreaching, the rules change when the custody of minor children is involved:
When the subject of the Agreement is the custody of minor children, even the minor children of the parties, other considerations override the basic rule. Pace v. Owens, 511 So.2d 489, 490 (Miss. 1987); Duran v. Weaver, 495 So.2d 1355, 1357 (Miss. 1986); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984). The welfare of the children and their best interest is the primary objective of the law, and the courts must not accord to contractual arrangements such importance as to turn the inquiry away from that goal.

Id. at 1215.
The McManus Court went further to say:
The court simply cannot surrender or subordinate its jurisdiction and authority as to the circumstances and conditions which will cause a change in custody. We hold such an Agreement to be void and contrary to public policy.
Id. at 1216. Bell v. Bell, 572 So.2d 841 (Miss. 1990), is similar in nature and reaches a similar conclusion. See also Reno v. Reno, 253 Miss. 465, 176 So.2d 58, 62 (1965).
A child of divorcing parents is a ward of the court. As such, the chancery court is charged with the duty to determine what would be in the best interest of that child and to protect that interest. In this regard, the chancellor in the instant case made the following statement in reference to the agreement:
Let me say this for the record. A contract like that is absolutely void ab initio when the Court considers, and which it must consider the paramount issue, and the only issue before this Court is the welfare of the child. And you can contract on that wall, and use forty-five witnesses to give your baby away or sell it or never see it again, and it has no meaning whatsoever. The thing that I will do is look at the rest of the contact, but I will decide, try to decide the best interest of the child when it comes to its custody and welfare.
This conclusion by the chancellor is supported by both the law and public policy of Mississippi. As is stated in Bunkley and Morse's Amis Divorce and Separation in Mississippi § 8.07 (1957), "since no person can have any property right or proprietary interest in a child, or in its care, custody and training ... any contract made by a parent, by which the care, custody or training is permanently transferred to a third person, is absolutely void as being against public policy." It should therefore naturally follow, that this rule also applies to agreements in which one parent contracts away his or her custodial rights to the other parent. This Court had made clear its position on a parent's right to extinguish by contract the custodial rights to his or her child: Walker v. Williams, 214 Miss. 34, 58 So.2d 79 (1952), wherein the Court stated:

*51 [A] parent of a child cannot irrevocably surrender the right to its custody by a contract in that behalf, even if the same had been made at a time when the parent was not in great distress and was a free agent, such a contract being void as against public policy.
Walker 58 So.2d at 81. See also, Bullard v. Welch, 171 Miss. 833, 158 So. 791, 792 (1935); Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 87 (1900).
Natalie testified that she signed the agreement because Darren told her that this was the only way they could stay together and she wanted to make her marriage work. Finally, and most importantly, Natalie testified that Darren told her that if she did not sign this agreement she would never see Haley again. Additionally, therefore, this contract is unenforceable because it was procured by the use of duress and undue influence.

C. Conclusion
The agreement in the case at bar is not enforceable. With regard to child custody, the paramount issue is that of the best interest and welfare of the child. In Mississippi, the chancery courts are charged with the duty and responsibility to make this determination. Parents of minor children cannot, by entering into private contracts, subordinate the authority of the chancery court. Moreover, this type of agreement or contract is regarded as against the public policy of this state. Therefore, the agreement in the instant case is void and unenforceable on this ground. Additionally, this contract should not be enforced by virtue of its being procured by duress and undue influence.

V. FINAL ANALYSIS AND CONCLUSION.
This Court affirms the chancellor's decision to grant Natalie a divorce from Darren on the ground of habitual cruel and inhuman treatment and holds that the chancellor did not commit error in not awarding Darren a divorce on the ground of adultery. Finally, this Court reverses the chancellor's decision to award custody of the minor child, Haley McKee, to the grandparents for the reason that the chancellor did not make a specific finding that both parents are totally unfit as to not have custody of the child. The issue of child custody is remanded to the chancery court for a determination of child custody and the support of the child. The present decree shall continue in effect until the new hearing is held. Because more than two years have now passed since the judgment, the chancellor, on remand, should consider the child custody issue in light of the parties' present circumstances.
AFFIRMED IN PART. REVERSED AND REMANDED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
ROBERTS, J. not participating.
NOTES
[1] Natalie McKee now Natalie (McKee) Flynt remarried subsequent to the decree of divorce.
[2] See Albright v. Albright, 437 So.2d 1003 (Miss. 1983).