MAXWELL, J.,
for the Court:
¶ 1. In a typical custody case between a natural parent and a third party, the doctrine of in loco parentis cannot be used by the third party to rebut the natural-parent presumption. But this is not a typical custody case.
¶2. Instead,.this is a three-way custody action between (1) the natural mother, (2) the mother’s ex-husband, who had supported, cared, and treated the child as his own, and (3) the man who turned out to be the child’s biological father. And in this “very limited, unique situation,” the fact the ex-husband stood in loco parentis by his fatherly actions towards the child does rebut the natural-parent presumption.[1] Thus, the chancellor erred by not considering the ex-husband on equal footing with his ex-wife and the biological father when determining which of the three should be awarded custody. We reverse the judgment awarding the ex-wife, custody, and we remand this case for the chancery court to conduct an Albright analysis[2] that takes into consideration whether it would be in the child’s best interest for the ex-husband to be awarded custody.
Background Facts and Procedural History

I. Divorce and Original Custody Agreement

¶ 3. Jake and Anne[3] divorced in 2009. During their five-year marriage, two children were born — Vanessa, born five months after Jake and Anne married, and Brett, born a year and a half later. As part of their custody, support, and property-settlement agreement, both Jake and *338 Anne received joint custody of the two children, alternating physical custody on a weekly basis.
¶ 4. But after ten months, both parties were dissatisfied with this arrangement. Anne filed a complaint for support, and Jake countered with a complaint for an emergency change of custody in which he alleged Anne was trying to move out-of-state with the children. The chancellor entered a temporary order preventing either party from moving until a final custody decision could be made.

II. Paternity and Custody Request

¶ 5. Before the custody hearing could be held, Tommie filed a motion for custody, visitation, and paternity of Vanessa, after DNA testing had revealed that he was her biological father.
¶ 6. Prior to marrying, Anne and Jake had an intimate relationship. But Anne had a one-night stand with Tommie. When Tommie learned Anne was pregnant, based on the timing, he suspected the child might be his. But he also knew that Anne had been romantically involved with Jake. Anne and Jake married in June 2004, when Anne was seventeen weeks pregnant. And Jake was under the impression the child was his, so he was there for the child’s delivery, cut the umbilical cord, and helped name her.
¶ 7. But in March 2007, when Vanessa was almost three years old, the couple received a phone message from Tommie’s mother. The message said Tommie was about to deploy overseas for military duty. Tommie’s mother said she had heard Anne had a baby in 2004 and wondered if it was Tommie’s.
¶ 8. Anne vehemently denied that Vanessa was Tommie’s child. But Jake decided to have a paternity test, which ruled him out as Vanessa’s biological father. Despite knowing in March 2007 he was not Vanessa’s biological father, Jake and Anne decided Jake would continue to raise Vanessa as his own daughter. But Jake and Anne’s marriage went downhill after that, ending in divorce two and a half years later.
¶ 9. While the post-divorce support and custody issues were pending, Anne contacted Tommie about his likely being Vanessa’s biological father. And after the DNA test confirmed this, Tommie filed his motion for custody, visitation, and paternity. The chancellor then heard four days of testimony, scattered between April 2011 and March 2012, concerning Jake’s, Anne’s, and Tommie’s custody requests.
III. Chancellor’s Custody Award[4]
¶ 10. Because Tommie is the biological father of Vanessa, the chancellor found Tommie was entitled to the natural-parent presumption. Mississippi law presumes that, as between a natural parent and a third party, such as a grandparent, it is in the best interest of the child for the natural parent to be awarded custody. Hamilton v. Houston, 100 So.3d 1005, 1009 (¶ 13) (Miss.Ct.App.2012) (citations omitted). In this three-way custody dispute, the chancellor designated Anne and Tommie as the natural parents and Jake as a third party. And while the chancellor found Jake stood in loco parentis, based on his raising Vanessa as his own, the chancellor found that Jake’s in loco parentis status could not rebut the natural-parent presumption.
¶ 11. Thus, the chancellor only considered whether Anne or Tommie should be *339 awarded custody. After applying the factors under Albright, the chancellor determined it was in Vanessa’s best interest that Anne be awarded custody and Tommie visitation. Tommie was also ordered to pay child support.
¶ 12. Though dubbing Jake a third party for custody purposes, the chancellor found Jake’s in loco parentis status did entitle him to visitation. Because the chancellor found that phasing Jake out of Vanessa’s life would have been detrimental to her, the chancellor awarded Jake visitation commensurate with Tommie’s.

IV. Notice of Appeal

¶ 13. The judgment awarding Anne custody and Tommie and Jake visitation was entered March 23, 2012. In their briefs, Anne and Tommie assert Jake’s notice of appeal from this judgment was untimely because the notice was not filed until June 1, 2012. But in making this assertion, they fail to consider the effect of Jake’s Rule 59 motion on the time limit to file a notice of appeal.
¶ 14. Under Mississippi Rule of Appellate Procedure 4(a), “[e Except as provided in Rules ¡¡.(d) and k(e),” the notice of appeal shall be filed “within 30 days after the date of entry of the judgment or order appealed from.” (Emphasis added). And under Rule 4(d), “[i]f any party files a timely motion of a type specified immediately below the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding.” Among those specified motions is a motion to alter or amend the judgment under Rule 59(e) of the Mississippi Rules of Civil Procedure. M.R.A.P. 4(d).
¶ 15. On March 29, 2012, Jake filed a Rule 59(e) motion to alter or amend. This motion was timely because it was “filed not later than ten days after entry of the judgment.” M.R.C.P. 59(e). Therefore, Jake’s thirty days to file a notice of appeal of the March 23, 2012 judgment did not begin until the chancellor denied Jake’s motion on May 14, 2012. See M.R.A.P. 4(d). So Jake’s notice of appeal filed on June 1, 2012, seeking appellate review of the March 23, 2012 judgment, was timely.
Discussion
¶ 16. In an appeal of a child-custody determination, our standard of review is narrow. We will not reverse unless the chancellor made factual findings that are manifestly wrong or clearly erroneous or applied an improper legal standard. Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003). Here, we find no fault with the chancellor’s factual findings. In fact, it is because of the chancellor’s specific findings concerning- Jake’s relationship to Vanessa that we must find that the chancellor applied the wrong legal standard.
¶ 17. The chancellor found that Jake stood in loco parentis to Vanessa; that he had supported, cared, and treated her as his own child, even after he learned about her biological parentage; and that he had shared her custody and expenses after the divorce. This put Jake in a “very limited, unique situation[]” where his supportive actions towards the child — versus the natural parent’s harmful actions — rebutted the natural-parent presumption. In re Smith, 97 So.3d 43, 47 (¶ 11) (Miss.2012).

I. Natural-Parent Presumption

¶ 18. This is certainly a unique custody dispute. More typically, the custody dispute is between the two natural parents or between a parent and non-parent, such as a grandparent. In a child-custody determination between two natural parents, the chancellor considers the factors under Albright to determine which natural parent custody should be awarded *340 custody, based on the best interest of the child. Lucas v. Hendrix, 92 So.3d 699, 705 (¶ 17) (Miss.Ct.App.2012) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)). However, in a child-custody determination between a natural parent and a third party, such as a grandparent, the law presumes that it is in the best interest of the child for the natural parent to have custody. Id. at 705-06 (¶ 17) (citing McKee v. Flynt, 630 So.2d 44, 47 (Miss.1993)); see Lorenz v. Strait, 987 So.2d 427, 434 (¶ 41) (Miss.2008) (holding that, because “[grandparents have no legal right [to] custody of a grandchild, as against a natural parent,” the natural-parent presumption applies in custody cases between grandparents and natural parents).
¶ 19. The natural-parent presumption is “not unassailable.” In re Custody of Brown, 66 So.3d 726, 728 (¶ 10) (Miss.Ct.App.2011) (citing Vaughn v. Davis, 36 So.3d 1261, 1264 (¶ 10) (Miss.2010)). But for the third party to rebut this presumption, he must clearly show “that (1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent’s conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or otherwise, to have custody.” In re Smith, 97 So.3d at 46 (¶ 9) (citing Vaughn, 36 So.3d at 1264-65 (¶¶ 10-13); In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d 424, 429-30 (¶ 20) (Miss.2009); Carter v. Taylor, 611 So.2d 874, 876 (Miss.1992)).
¶ 20. In this case, applying precedents concerning custody determinations between a natural parent and a grandparent, the chancellor categorized Jake as a third party. And because the chancellor also found Jake could not show Anne or Tommie had abandoned or deserted Vanessa, acted so immorally as to be detrimental to Vanessa, or was otherwise unfit, the chancellor imposed the legal presumption that it was in Vanessa’s best interest for Anne or Tommie to be awarded custody.
¶ 21. But there is a body of more relevant cases dealing with this very scenario — when a husband acts under the assumption that he is the father of the child his wife bore. And in these cases, the doctrine of in loco parentis has been used to put the presumed father on equal footing with the natural parent.

II. In Loco Parentis

¶ 22. In Griffith v. Pell, 881 So.2d 184, 185 (¶¶2-3) (Miss.2004), it came to light during divorce proceedings that the husband was not the biological father of the child born to the marriage. The chancellor granted partial summary judgment to the wife, finding the husband had no right to custody of the child. Id. at (¶ 3). The supreme court reversed based on the doctrine of in loco parentis, which the court found clearly applied. Id. at 186 (¶ 6). The supreme court held: “Merely because another man was determined to be the minor child’s biological father does not automatically negate the father-daughter relationship held by [the husband] and the minor child.” Id. Further, the supreme court cited with approval other jurisdictions that have held full-blown parental rights do not spring merely from a biological connection. In these cases, the burden is on the biological father to show a sufficient relationship with the child to entitle him to parental rights. Id. at 186-87 (¶ 9). The burden is not, as the chancellor found in Jake’s case, on the husband to prove that the biological father’s natural-parent presumption has been rebutted.
¶ 23. In fact, two years after Pell, in J.P.M. v. T.D.M., 932 So.2d 760, 768 (¶ 21) (Miss.2006), the supreme court rejected the very reasoning the chancellor used in this case to exclude Jake as a potential custodial parent. Just as in Pell, during *341 divorce proceedings, the wife revealed that her husband, who had been the primary caretaker of the child since the separation, was not the biological father. Yet this time, the chancellor awarded the husband custody as the “father in fact.” Id. at 762 (¶1).
¶ 24. On appeal, the wife asserted that, because her ex-husband was not the biological father, he should be considered a third party in their custody dispute. The wife asked the supreme court to apply the line of cases holding that a third party “can only obtain custody” upon showing the natural parent has either abandoned the child, the natural parent’s conduct is so immoral as to be detrimental to the child, or the natural parent is mentally or otherwise unfit for custody. Id. at 767-68 (¶ 20-21) (citing Keely v. Keely, 495 So.2d 452 (Miss.1986); Sellers v. Sellers, 638 So.2d 481 (Miss.1994)). But the supreme court found “the instant situation distinguishable” because, in the cases the ex-wife cited, the third parties “were an aunt and a grandfather, respectively,” whereas in J.P.M., the ex-husband had been the child’s “ ‘legal father’ since her birth.” Id. at 768 (¶ 21). “Thus, he ha[d] existing legal rights and obligations that the third parties in [the cases the wife cited] did not.” Id.
¶ 25. The case the supreme court found instead controlled was Pell and its particular application of the doctrine of in loco parentis. J.P.M., 932 So.2d at 768 (¶ 21) (citing Pell, 881 So.2d 184). So the court found the chancellor, by awarding the husband custody, had reached the right result, using the wrong legal doctrine. While rejecting that the husband was the “father in fact,” the supreme court found he still had parental rights springing from the doctrine of in loco parentis, as applied in Pell. J.P.M., 932 So.2d at 768 (¶ 21)
¶ 26. In J.P.M., Presiding Justice Cobb wrote a specially concurring opinion expressing her concern that in loco parentis was too broad a doctrine to apply to these scenarios. Id. at 779-85 (¶¶ 64-87) (Cobb, P.J., specially concurring). Because it is not just deceived husbands that may stand in loco parentis, Justice Cobb advocated using the more factually tailored doctrine of equitable estoppel or equitable fatherhood as justification for the rebuttal of the natural-parent presumption. Id.
¶ 27. Justice Cobb’s warning proved to be prophetic. Eight years later, in In re Smith, grandparents argued that because they stood in loco parentis, as that doctrine is defined, they stood on equal footing with the natural mother. In re Smith, 97 So.3d at 46-47 (¶ 4). The supreme court rejected this argument, finding that “[t]he doctrine of in loco parentis does not, by itself, overcome the natural-parent presumption.” Id. at 47 (¶ 10). But the court clarified that it was not overruling Pell and J.P.M. Rather, those cases represented “very limited, unique situations” where “several facts” led to the rebuttal of the natural-parent presumption — the husbands’ standing in loco parentis being one of them. In re Smith, 97 So.3d at 47 (¶ 11). Because the husbands also “had supported, cared for, and treated the child[ren] as their own,” because they had been required to pay child support (“with the burden should go the benefit”), and because “the biological fathers were not really in the picture,” the natural-parent presumption had been overcome. Id.
¶ 28. Here, the chancellor expressly found Jake stood in loco parentis. He also found Jake supported, cared for, and treated Vanessa as his own, even after he learned he was not her biological father— an action the chancellor found “quite admirable.” In the divorce proceeding, Jake had been ordered to pay half of Vanessa’s day-care expenses, and the only reason he *342 did not have to pay Anne child support was that he shared equal custody time and expenses with her. The only difference between this case and Pell and J.P.M. is that, in those cases, the natural father either disclaimed any rights to the child or could not be conclusively established. See In re Smith, 97 So.3d at 47 (¶ 11).
¶ 29. Based on the chancellor’s own findings of fact, we find Jake is in that “very limited, unique situation” where Pell and J.P.M. control. Thus, the chancellor erred by instead applying the line of cases where a third party can only rebut the natural-parent presumption by showing the natural parents had abandoned or deserted their child or were detrimentally immoral or otherwise unfit.
¶ 30. Because we find Jake had overcome the natural-parent presumption, he should have been considered on equal footing with Anne and Tommie in the chancellor’s Albright analysis. We reverse the custody award and remand for the chancery court to conduct an Albright analysis that includes Jake as a potential custodial parent. -
¶ 31. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.

. In re Smith, 97 So.3d 43, 47 (¶ 11) (Miss.2012).

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983) (providing multiple factors for the court to consider when determining the child’s best interest regarding custody).

.The chancellor designated this case as confidential. To protect the identities of the people involved, particularly the minor child, all of the names used in this opinion are fictitious. See M.R.A.P. 48A.

: No one disputes that Jake is Brett’s biological father. The chancellor found there had been no material change since the divorce decree to justify a modification of Brett's custody. And neither Jake nor Anne appeals this portion of the chancellor's judgment.